Bernard CAREY, individually and as State's Attorney of Cook County, Illinois, and County of Cook, a body politic and corporate, on behalf of all other individuals and units of local government similarly situated, Plaintiffs,

v.

Philip KLUTZNICK, Secretary of Commerce of the United States, Vincent Barabba, Director, Bureau of Census, and Stanley D. Moore, Regional Director, Bureau of Census, Defendants.

No. 80 C 4566.

United States District Court,
N. D. Illinois, E. D.

Oct. 23, 1980.

---

Bernard Carey, State's Atty. of Cook County, Chicago, Ill., for plaintiffs.

Maryanne Mason, Asst. U. S. Atty., Chicago, Ill., Theodore M. Grossman, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This matter is before the Court on plaintiffs' motion to extend a preliminary injunction issued by United States District Judge Joseph Sam Perry on September 16, 1980, requiring the defendants to keep the offices of the United States Bureau of the Census open in Cook County, Illinois, and to continue the 1980 decennial census so that all the housing units in Cook County would be either enumerated or determined to be vacant. By its terms the injunction is due to expire on October 25, 1980.

Plaintiffs contend that the defendants have not fully complied with the terms of the injunction and that it should be extended for a reasonable time to enable the defendants to achieve full compliance.[1] Since this Court finds that the defendants have made a good faith effort at substantial compliance with the terms of the preliminary injunction, and that at this stage of the proceedings the balance of hardships would weigh more heavily on the defendants should the injunction be extended than on the plaintiffs should the injunction be allowed to expire, plaintiffs' motion for an extension of the preliminary injunction is denied.

■ It would, of course, be inappropriate for this Court to conduct a de novo hearing on the question of whether the preliminary injunction was properly issued in the first instance. *See, e.g., Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197 (2d Cir. 1970). Rather, the sole question before the Court is whether the defendants have substantially complied with the terms of the preliminary injunction, and if not, whether an extension of the injunction is necessary to achieve full compliance.

In the opinion supporting his issuance of the injunction, Judge Perry indicated that there were approximately 95,800 unclassified housing units in Cook County, Illinois.[2]

---

1. In their motion to extend the preliminary injunction, the plaintiffs assert three areas in which the defendants have fallen short of full compliance with the terms of the injunction. These are: (1) that there are still approximately 13,000 unclassified units in Cook County despite Judge Perry's order that all units were to be either enumerated or determined to be vacant; (2) that the defendants have not provided the plaintiffs with a breakdown of the unclassified units attributable to each district office of the Census Bureau; and (3) that if the district offices close as scheduled on October 25, 1980, the Tinley Park District Office will be unable to respond to a document filed by the Village of Dolton on October 23, 1980, showing an undercount of nearly 500 persons in that district. Testimony at the hearing on the motion, however, revealed that there are only 7,000 unclassified units remaining in Cook County. In addition, the defendants provided plaintiffs with a district by district breakdown of the remaining

unclassified units at the hearing, although the preliminary injunction did not specifically require defendants to do so, and defendants also informed the plaintiffs that the census data for the Village of Dolton had been revised to reflect a larger undercount than even the Village's own survey reflected. Therefore, the only issue left to be addressed in this opinion is whether the defendants have failed to comply with the terms of the preliminary injunction by reason of the 7,000 unclassified units still remaining in Cook County.

2. At the hearing on the motion to extend the injunction, witnesses for the defendant testified that they were mistaken in their earlier testimony that 95,800 units were unclassified in Cook County. In fact, only 13,000 unclassified units existed at the time the preliminary injunction was issued. It is unfortunate that defendants' apparent carelessness in marshalling the data at this hearing may have misled the Court

According to the terminology employed by the Census Bureau, an "unclassified" unit is one that the Bureau has been unable to determine is either occupied or vacant. At the hearing on the plaintiffs' motion to extend the injunction, Stanley Moore, Regional Director of the Bureau of the Census for the region that includes Cook County, testified that after the injunction was issued he ordered each district office to take action directed at reducing the number of unclassified units in Cook County. Mr. Moore further testified that the Bureau has successfully reduced the number of unclassified units in Cook County to approximately 7,000 at the present time. This represents only .35% of the nearly 2,000,000 household units in Cook County, which is obviously de minimis under any standard.

The plaintiffs have failed to demonstrate that they would be irreparably injured by the failure of the Census Bureau to account for these 7,000 units currently listed as unclassified. Under a complex procedure used by the Bureau, occupancy characteristics typical of the census district in which the unclassified unit is located will be imputed to the unit when the final computer tally of population is undertaken. Assuming that most of the units in Cook County are occupied, the unclassified units will not be "lost" in the final compilation that is used in determining legislative apportionment and a locality's share of federal expenditures. By contrast, if the defendants were ordered to continue the enumeration process until every unclassified unit was accounted for, a process of indefinite duration, it would be impossible to satisfactorily complete the census and have it delivered to the President by January, 1980, as required by law. See 13 U.S.C. § 143.

■■■ The United States Court of Appeals for the Seventh Circuit has consistently looked to four factors in determining whether preliminary injunctive relief is appropriate: (1) whether the plaintiff will be irreparably injured if the injunction does not issue; (2) whether the plaintiff has a reasonable probability of success on the merits; (3) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant; and (4) whether the granting of the injunction will serve the public interest. See Reinders Brothers, Inc. v. Rain Bird Eastern Sales Corp., 627 F.2d 44 (7th Cir. 1980); Fox Valley Harvestore, Inc. v. Smith Harvestore Products, Inc., 545 F.2d 1096 (7th Cir. 1976); Illinois Migrant Council v. Pilliod, 540 F.2d 1062 (7th Cir. 1970). The same factors are pertinent in determining whether to extend a preliminary injunction. In the context of the case at bar, the plaintiffs' have failed to show that they will be irreparably injured if the preliminary injunction is not extended, nor have they shown that any threatened injury to their interests outweighs the potential injury to the defendants if the injunction is extended. Furthermore, plaintiffs have not shown that the public interest in an accurate, current census would be furthered by the extension of the preliminary injunction. Accordingly, plaintiffs' motion to extend preliminary injunction is denied. It is so ordered.

However, in the interest of bringing the record in this case up-to-date and in order to clarify some of the questions left unanswered in the hearing on this motion, the defendants are hereby ordered to file a report supplementing the report filed with this Court on October 16, 1980. The supplemental report should set forth the procedures used in reducing the 13,000 unclassified units existing at the time the injunction was issued to the estimated 7,000 such units of record today and in particular what actions the enumerators took in that regard.[3] This supplemental report shall be

---

in its assessment of defendants' culpability. It is certainly questionable whether Judge Perry would have even issued the original injunction had defendants advised the Court of the true state of affairs at the initial injunction hearing.

**3.** As previously noted, Mr. Moore testified that the district offices were ordered to instruct the enumerators to take certain actions to reduce the number of unclassified units. The information desired is exactly what these enumerators did (not what they were instructed to do) pursuant to the instructions from the district offices.

filed with this Court and served upon the parties by October 31, 1980. It is so ordered.